UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JACQUELINE NOWICKI-HOCKEY,

      *Plaintiff*,

           CASE NO. 11-CV-10482

*v.*

           DISTRICT JUDGE THOMAS L. LUDINGTON
           MAGISTRATE JUDGE CHARLES E. BINDER

BANK OF AMERICA,

      *Defendant*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS
(Doc. 27)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion to dismiss be **GRANTED** as to Plaintiff's claim under the Michigan Consumer Protection Act (Count III) and **DENIED** as to Plaintiff's breach of contract claim (Count II).

## II.    REPORT

### A.    Introduction

This case was removed from Montmorency County Circuit Court on February 7, 2011. (Doc. 1.) The complaint alleges three counts: (I) injunctive relief to adjourn the sheriff's sale of Plaintiff's real property scheduled for January 6, 2011; (II) breach of contract (note and mortgage); and (III) violation of the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.902.

On November 21, 2011, United States District Judge Thomas L. Ludington referred the case for general pretrial case management to the undersigned magistrate judge. (Doc. 28.) Defendant

Bank of America filed the instant motion to dismiss on November 15, 2011. (Doc. 27.) Plaintiff

filed a response on November 23, 2011 (Doc. 29), and Defendant filed a reply on December 29,

2011. (Doc. 31.) Plaintiff also filed a sur-reply on December 19, 2011. (Doc. 32.)[1] Accordingly,

pursuant to E.D. Mich. LR 7.1(f)(1), the motion is ready for report and recommendation without

oral argument.

### B.      Background

As set forth in the complaint, Plaintiff purchased a parcel of real property known as Lot 19

of the Meridian Heights Subdivision in Montmorency County, Michigan, on July 23, 1993. (Doc.

1 at 8-9.) In order to purchase the property, Plaintiff obtained a mortgage from First of America.

(*Id.* at 9.) Plaintiff avers that the mortgage was sold, as per the mortgage document, to Standard

Federal Bank in 1996. (*Id.* at 9.) Defendant corrects Plaintiff, noting that the mortgage was not

sold, but rather Plaintiff received a refinance loan in the original amount of $45,750.00 from

Standard Federal Bank on March 14, 1996. (Doc. 27 at 10.) At that time, Plaintiff executed a

promissory note and, to secure repayment, Plaintiff granted Standard Federal a mortgage on the

property. (Doc. 27 at 10; Ex. 1 (note), Ex. 2 (mortgage).)

Standard Federal thereafter assigned its interest in the mortgage to ABN Amro. On

September 27, 2006, ABN Amro agreed to accept a repayment plan for Plaintiff's mortgage loan.

(Doc. 32 at 8-10.) The repayment agreement provided that "[a]ny money [ABN Amro] receives

during the plan will first be applied toward disbursements advanced by ABN Amro Mortgage

Group, Inc., on your behalf (such as attorney fees and costs, property preservation costs, etc.) and

then will be applied toward payments." (Doc. 32 at 8.) Under the repayment agreement, Plaintiff

---

[1]The document was filed as a response and, although leave was not sought to file the sur-reply, Defendant
has not objected to the Court's consideration of this document.

was to pay $820.98 per month from November 25, 2006, through August 25, 2008. (Doc. 32 at 10.) ABN Amro then assigned its interest in the mortgage to LaSalle Bank, and in August 2008, LaSalle Bank assigned its interest to Bank of America. (Doc. 1 at 9.)

Plaintiff avers that "[s]ince 1998, plaintiff has made every payment required pursuant to the note and mortgage," but that "Defendant has failed to post and credit plaintiff with the payments under the note and mortgage." (*Id.*) Defendant counters that Plaintiff has not made all her payments and has "defaulted a number of times over the life of [the] Loan, and BANA or its predecessors agreed to at least one modification and to at least two repayment plans to enable Plaintiff to become current on her payments." (Doc. 27 at 11.) Defendant points to correspondence from Plaintiff admitting to and apologizing for the default, which appears to have occurred before the relevant repayment plan was executed. (Doc. 27 at Ex. 4.)

The complaint further alleges that "[i]n spite of receiving each and every payment required under the mortgage, defendant has declared a default and has further invoked the power of sale pursuant to paragraph 21 of the mortgage document." (Doc. 1 at 10.) Apparently, Defendant contended that Plaintiff had not made payments as required under the repayment plan, i.e., from 2006 through 2008. (Doc. 29 at 47.) Plaintiff avers that Defendant has "breached the terms of the note and mortgage by failing to post and credit plaintiff's payments" and, because these payments were not credited, she has improperly been defaulted and threatened with foreclosure and sale of her home. (Doc. 1 at 10) (Count II). Plaintiff also avers that this failure to credit payments and initiation of foreclosure proceedings is deceptive and unconscionable and thus violates the MCPA. (*Id*. at 11-12 (Count III).) Plaintiff alleges that as a result of Defendant's breach, she "has been financially damaged." (*Id*.)

Defendant explicitly seeks the dismissal only of Counts II and III. The Court finds this to be appropriate, since Count I seeks equitable relief in the form of an injunction, and thus is not a separate legal claim.

### C.   Motion Standards

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). In addition, if the allegations in the complaint suffice to establish that an affirmative defense bars the case, it should be dismissed. *Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quotation omitted). This circuit has further "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Associates Corp.*

*v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (consideration of other materials that "simply filled in the contours and details of the plaintiff's [second amended] complaint, and added nothing new" did not convert motion to dismiss into motion for summary judgment).

### D.    Analysis and Conclusions

### 1.    Breach of Contract - Count II

Under Michigan law, when interpreting contracts such as mortgages, the goal is to ascertain and enforce the parties' intent according to the plain language of the contract. *New Freedom Mtg. Corp. v. Globe Mtg. Corp.*, 281 Mich. App. 63, 76, 761 N.W.2d 832 (2008). "Clear, unambiguous and definite contract language must be enforced as written and courts may not write a different contract for the parties or consider extrinsic evidence to determine the parties' intent." *Wausau Underwriters Ins. Co. v. Ajax Paving Indus., Inc.*, 256 Mich. App. 646, 650, 671 N.W.2d 539 (2003). Contracts should be construed to give effect to each term or phrase whenever practicable. *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 467, 663 N.W.2d 447 (2003). If two provisions irreconcilably conflict, a question of facts exists that precludes summary judgment. *Id.* at 480.

To state a breach of contract claim under Michigan law, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) a breach of that contract by the defendant; and (3) damages resulting from the defendant's breach. *See, e.g., Synthes Spine Co., LP v. Calvert*, 270 F. Supp. 2d 939, 942 (E.D. Mich. 2003).

Defendant contends that Plaintiff committed the first breach (apparently by defaulting prior to entering into the repayment agreement) and thus she cannot recover for any breach of contract. (Doc. 27 at 13-14.) Defendant further argues that Plaintiff cannot identify any payments that were

misapplied and asserts that "at least one of the checks" she submitted, through her then-counsel, "is marked NSF (non-sufficient funds) and other checks from the period are missing." (Doc. 27 at 11, 15.) However, Defendant has not specified which check was allegedly marked NSF nor has Defendant specified precisely which payments were defaulted, i.e., which dates payments were due yet no payment was received.

In addition, Defendant contends that Plaintiff has not articulated what her damages are and that "any damages Plaintiff allegedly suffered are due to the fact that she has defaulted on her payment obligations." (Doc. 27 at 15.) Defendant further notes that because "Plaintiff defaulted in her payments[,] BANA has the right to proceed with foreclosure under the terms of the Note and Mortgage." (*Id.*)

I first suggest that Defendant's statement that it will proceed with foreclosure in and of itself supports Plaintiff's averment that she has been financially damaged if she can show that payments were made but not properly credited. (Doc. 27 at 15.) After all, Plaintiff sought equitable relief (Count I) to prevent the very foreclosure Defendant seeks to initiate. (Doc. 1 at 9-10.)

Plaintiff contends that Defendant failed to credit her payments, specifically, those made under the relevant repayment plan, i.e., the payments of $820.98 per month from November 25, 2006, through August 25, 2008. (Doc. 1; Doc. 32 at 10.) I suggest that a failure to credit payments made would constitute a breach of the mortgage contract if proven. Plaintiff's complaint also avers that she is not in default.

Defendant's motion asks Plaintiff to prove which payments were made but not credited. I suggest that Defendant's request throws the motion to dismiss standard on its head. Instead of construing the complaint in the light most favorable to Plaintiff and accepting all the factual allegations as true, *Bovee, supra,* Defendant asks this Court to assume that the facts recited by

Plaintiff are untrue and to dismiss because Plaintiff allegedly cannot provide sufficient "factual support" to prove that Defendant's contentions are untrue. (Doc. 27 at 15.) Although a summary judgment motion could properly test Plaintiff's factual support, a motion to dismiss is of a fundamentally different character.[2]

I therefore suggest that as to Count II, Defendant's motion to dismiss should be denied. *See Corrigan v. First Horizon Home Loan Corp.*, No. 09-12721, 2010 WL 728780, at *8-9 (E.D. Mich. Feb. 25, 2010) (denying motion to dismiss where the plaintiff alleged the defendant had breached the home equity line of credit agreement by imposing early termination and late fees one month too early); *Williamson v. Ocwen Loan Servicing*, No. 3:09-0514, 2009 WL 5205405, at *6

---

[2]If factual support were a relevant issue, Plaintiff has offered the following evidence in her responsive brief:
- November 25, 2006: cancelled check to ABN Amro Mortgage in the amount of $820.98 (Doc. 29 at 19)
- December 2006? (date is obscured): Western Union transfer to LaSalle Bank in the amount of $820.98 (*Id*. at 20)
- January 17, 2007: bank record showing check # 45340225 processed in the amount of $820.98 (*Id*. at 21)
- February 25, 2007: Western Union transfer to LaSalle Home Mortgage in the amount of $820.98. (*Id*. at 22)
- March 24, 2007: cancelled check to ABN Amro Mortgage in the amount of $820.98 (*Id*. at 23)
- April 23, 2007: cancelled check to ABN Amro Mortgage in the amount of $820.98 (*Id*. at 24)
- May 24, 2007: cancelled check to ABN Amro (stamped pay to order of LaSalle Bank) in the amount of $820.98 (*Id*. at 25)
- June 22, 2007: cancelled check to ABN Amro Group in the amount of $820.98 (*Id*. at 26)
- July 25, 2007: cancelled check to LaSalle bank in the amount of $820.98 (*Id*. at 27)
- August 13, 2007: bank statement showing check # 6596 processed in the amount of $820.96 (*Id*. at 28)
- September 24, 2007: cancelled check to LaSalle Bank in the amount of $820.98 (*Id*. at 29)
- October 12, 2007: cancelled check to ABN/Amro Mortgage (stamped pay to order of LaSalle Bank) in the amount of $784.21 (*Id*. at 30) (memo indicates number different from mortgage, i.e. 020-906-895-2)
- October 23, 2007: cancelled check to LaSalle Bank in the amount of $820.98 (*Id*. at 31)
- November 23, 2007: cancelled check to LaSalle Bank in the amount of $820.98 (*Id*. at 32)
- December 23, 2007: cancelled check to LaSalle Bank in the amount of $820.98 (*Id*. at 33)
- December 30, 2007: cancelled check to ABN Amro (stamped pay to order of LaSalle Bank) in the amount of $820.98 (*Id*. at 34)
- January 24, 2008: cancelled check to LaSalle Bank in the amount of $820.98 (*Id*. at 35)
- February 24, 2008: cancelled check to LaSalle Bank in the amount of $820.98 (*Id*. at 36)
- March 24, 2008: cancelled check to LaSalle Bank dated in the amount of $820.98 (*Id*. at 37)
- April 25, 2008: cancelled check to LaSalle Bank in the amount of $820.98 (*Id*. at 38)
- May 24, 2008: cancelled check to LaSalle Bank in the amount of $820.98 (*Id*. at 39)
- June 3, 2008: bank records showing check #5987 processed in the amount of $820.98 (*Id*. at 40)
- July 25, 2008: Western Union transfer in the amount of $1,059 to Cenlar Central Loan Admin (*Id*. at 41) (plaintiff notes that this is the "last payment per loan servicing center - per John Balez at LaSalle because of the transition to BOA")

Defendant, on the other hand, has replied that Plaintiff's check dated November 25, 2006, was processed initially but then was returned and marked NSF and that payments were not received on October 25, 2006, August 25, 2007, June 25, 2008, and August 25, 2008. (Doc. 31 at 4-5.)

(M.D. Tenn. Dec. 23, 2009) (denying motion to dismiss where the plaintiff alleged that the defendant mortgage servicer had failed to timely credit her payments).

### 2.   Michigan Consumer Protection Act - Count III

Defendant contends that this claim must be dismissed because the "MCPA does not apply to a 'transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state of the United States.'" (Doc. 27 at 15-16, citing Mich. Comp. Laws § 445.904(1)(a).) Defendant further argues that "BANA is a national banking association, which is regulated under federal law[,] . . . [and] the MCPA does not apply to BANA's business as a matter of law." (Doc. 27 at 16.) Defendant also contends that "the question here is whether the general transaction between BANA and Plaintiff was specifically authorized by law . . . [and] a mortgage loan - is specifically authorized by law" such that Plaintiff's claim under the MCPA should be dismissed. (Doc. 27 at 16-17.)

Defendant correctly cites the Michigan statute providing that "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States" is exempt from the MCPA. Mich. Comp. Laws § 445.904(1)(a). As explained by the Michigan Court of Appeals, it is the type of transaction, not the specific behavior of the defendant during the transaction, that governs the exemption:

> [W]hen the legislature said that transactions or conduct "specifically authorized" by law are exempt from the MCPA, it intended to include conduct the legality of which is in dispute. . . . [W]e conclude that the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is "specifically authorized." Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct is prohibited.

*Newton v. Bank West*, 262 Mich. App. 434, 438, 686 N.W.2d 491 (2004) (citations omitted).

8

Since Defendant is a national banking association that is chartered and governed by the National Bank Act, it is authorized to "make, arrange, purchase, or sell loans or extensions of credit secured by liens on interests in real estate." 12 U.S.C. § 371(a). Thus, Defendant's conduct is exempt from the purview of the MCPA. *See Soto v. Wells Fargo Bank, N.A.*, No. 11-14064, 2012 WL 113534, at *8 (E.D. Mich. Jan. 13, 2012) ("Courts have consistently applied the MCPA exemption to the mortgage business of regulated lending institutions"); *Hanning v. Homecomings Fin. Networks, Inc.*, 436 F. Supp. 2d 865, 869 (W.D. Mich. 2006) (holding that mortgage lenders are exempt under MCPA). I therefore suggest that Defendant's motion to dismiss Plaintiff's claim under the MCPA (Count III) should be granted.

### E.   Conclusion

Accordingly, I suggest that Defendant's motion to dismiss be granted in part and denied in part, i.e., granted as to Plaintiff's claim under the MCPA (Count III) and denied as to Plaintiff's breach of contract claim (Count II).

## III.   <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins.*

*Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely-filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.


                                              s/ Charles E. Binder
                                              CHARLES E. BINDER
Dated: February 10, 2012                      United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Brandon Blazo, and served by first class mail on Jacqueline Nowicki-Hockey, 8688 Birdlewood Trail, Howell, MI, 48843-6340.

Date:  February 10, 2012              By    s/Jean L. Broucek
                                     Case Manager to Magistrate Judge Binder